UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| JOHN LAUSSER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00186-JAW |
| | ) | |
| ELITE AIRWAY SERVICES, LLC, | ) | |
| *d/b/a* ELITE AIRWAYS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PRELIMINARY ORDER ON MOTION FOR DEFAULT JUDGMENT**

Following a damages hearing on two former employees' motion for default judgment against their former employers and plaintiffs' submission of post-hearing briefing, the court issues a preliminary order for the plaintiffs to respond to its questions to facilitate accurate calculation of the damages to which the plaintiffs are entitled against the defaulted parties.

## I.     PROCEDURAL BACKGROUND

On May 20, 2024, John Lausser and Deborah Hayes (jointly, the Plaintiffs) filed a complaint in this court against Elite Airway Services, LLC, doing business as Elite Airways (the Company), and John Pearsall (together, the Defendants), alleging that the Defendants violated Maine's Unpaid Wages statute, 26 M.R.S. §§ 626 and 626-A; Maine's Minimum Wage and Overtime law, 26 M.R.S. § 664; the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 213; and Maine's Whistleblower Protection Act (MWPA), 26 M.R.S. § 833. *Compl.* at 1, 5-7 (ECF No. 1). The Plaintiffs served the Defendants, respectively, on December 20, 2024. *See Aff. of Serv. of Summons*

*and Compl.* (ECF No. 12) (*Pearsall Serv.*); *Aff. of Serv. of Summons and Compl.* (ECF No. 13) (*Elite Airways Serv.*).  Neither Elite Airways nor Mr. Pearsall filed an answer to the complaint.

On February 12, 2025, Plaintiffs moved for entry of default against both Defendants, *Pls.' Mot. for Entry of Default* (ECF No. 15), and, on February 13, 2025, the Deputy Clerk of Court entered default against both Defendants.  *Order Granting Mot. for Entry of Default* (ECF No. 16).  After obtaining an order extending the time for filing a motion for default judgment, *Order* (ECF No. 18), Plaintiffs filed a motion for default judgment against both Defendants on March 31, 2025, requesting "the clerk enter default judgment against Defendants" based on their failure to appear or otherwise defend against Plaintiffs' claims.  *Pls.' Mot. for Default J.* at 11 (ECF No. 19).  Along with their motion for default judgment, Plaintiffs also filed affidavits of each Plaintiff as well as their attorney, Sally Morris, Esq. and additional attachments in support of their motion.  *Decl. of John Lausser in Support of Req. for Default J.* (ECF No. 20) (*Lausser Aff.*); *Decl. of Deborah Hayes in Support of Req. for Default J.* (ECF No. 21) (*Hayes Aff.*); *Decl. of Sally Morris in Support of Fee Pet.* (ECF No. 22) (*Morris Aff.*); *Additional Attachs.* (ECF No. 23).

On April 14, 2025, the Court issued a preliminary order, noting the Plaintiffs' motion for default judgment did not identify a sum certain for their requested damages, informing them that a hearing is required under Federal Rule of Civil Procedure 55(b) for claims of damages other than for a sum certain, directing Plaintiffs to file a clarifying memorandum of law, and holding adjudication of the

motion for default judgment in abeyance pending resolution of these issues. *Order* (ECF No. 24). The Plaintiffs responded on April 28, 2025, conceding their claims are not for a sum certain and that a hearing is required. *Pls.' Responsive Filing in Reference to Order ECF No. 24* (ECF No. 25).

The Court held a hearing on the motion for default judgment on May 30, 2025. *Min. Entry* (ECF No. 27). In compliance with the Court's instructions at that hearing, the Plaintiffs filed a post-hearing brief in support of their motion for default judgment and a supplemental affidavit of Plaintiffs' counsel in support of the petition for attorney's fees. *Suppl. Br. to Determine Damages and Assign Liability* (ECF No. 30) (*Pls.' Suppl. Brief*); *Decl. of Sally Morris in Support of Suppl. Fee Pet.* (ECF No. 31) (*Morris Suppl. Aff.*).

The Court issues this preliminary order to raise several issues in Plaintiffs' post-hearing brief for calculating damages and to require the Plaintiffs to respond.

## II.    STATEMENT OF FACTS[1]

### A.    The Parties

John Lausser, a resident of South Dakota, is an airline pilot employed by Elite Airways from May 10, 2021 through September 27, 2022. *Compl.* ¶ 1. Deborah Hayes, also a resident of South Dakota, is a flight attendant employed by Elite Airways from March 3, 2022 through September 28, 2022. *Id.* ¶ 2.

---

[1]    "After an entry of default, a court may examine a plaintiff's complaint to determine whether it alleges a cause of action. In making that determination, it must assume that all well pleaded factual allegations are true." *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992) (per curiam). Here, default has been entered against both Defendants; thus, for the purposes of this motion for default judgment, the Court accepts the well pleaded factual allegations of the Plaintiffs' complaint as true.

Elite Airways is an airline that provides airline passenger service between, among other places, Maine and Florida. *Id.* ¶ 3. Elite Airways had a principal place of business in Portland, Maine. *Id.* John Pearsall, a resident of Maine and the President of Elite Airways, exercises day to day control of Elite Airways and is involved in the supervision and payment of employees. *Id.* ¶ 4.

### B.    Elite Airways' Financial Difficulties

Between May 1, 2022 and June 1, 2022, Mr. Pearsall caused the employee company medical insurance to fall behind in payments, leading to the denial of employees' medical claims. *Id.* ¶ 7. On or about June 6, 2022, Mr. Pearsall promised that employees' medical insurance would be restored on June 7, 2022; however, coverage was not reinstated until June 15, 2022. *Id.* ¶ 8. Throughout the summer of 2022, Mr. Pearsall made repeated promises about expected funding so that employees would be paid. *Id.* ¶ 9.

### C.    John Lausser's Employment and Compensation by Elite Airways

As a salaried employee of Elite Airways, Mr. Lausser earned approximately $3,333 per week at all times relevant to the complaint. *Id.* ¶ 5. On or about May 13, 2022, Mr. Pearsall announced a new salary increase for pilots to go into effect June 1, 2022. *Id.* ¶ 6. Mr. Lausser received his salary disbursement on June 1, 2022; however, this was the last time his salary was paid on time. *Id.*

Mr. Lausser received a tardy payment for the June 1, 2022 through June 15, 2022 pay period on July 5, 2022. *Id.* ¶ 10. On or about July 6, 2022, Mr. Pearsall stated that Elite Airways intended to disburse the June 30, 2022 payroll within that

week, but Mr. Lausser never received this payment. *Id.* In July 2022, Mr. Lausser did not receive salary disbursements but was asked to be patient and remain available for trips because payroll would be coming in another two weeks. *Id.* ¶ 11.

On August 1, 2022, Mr. Pearsall asked Mr. Lausser to pilot a trip from August 2, 2022 to August 4, 2022, which Mr. Lausser flew, even though he was not being paid, in good faith and in reliance on the promises to be paid. *Id.* ¶ 12. Mr. Pearsall continued to make assurances about Mr. Lausser's pay throughout August and September of 2022. *Id.* ¶ 13.

### D. John Lausser's Communications with the South Dakota Department of Labor & Regulation

On or about September 15, 2022, Mr. Lausser inquired with the South Dakota Department of Labor and Regulation (S.D. DOL) about seeking unemployment compensation since he had not been paid since July 5, 2022, for the pay period ending on June 15, 2022. *Id.* ¶ 14. The S.D. DOL told Mr. Lausser to file a notice of Unpaid Wages form through their website. *Id.* On or about September 15, 2022, Mr. Pearsall received notice from the S.D. DOL that Mr. Lausser was still employed but was owed approximately $39,999.94 in unpaid wages. *Id.* ¶ 15. Mr. Pearsall never responded to the S.D. DOL. *Id.*

### E. John Lausser's Termination by Elite Airways

On or about September 19, 2022, Mr. Lausser received an email from a colleague on the company email server, the last communication he received on his Elite Airways company email. *Id.* ¶ 16. On or about September 24, 2022, Mr. Lausser inquired with the Company about his emails not working and, several days later, was

informed by Company tech support that his email account had been disabled and he should ask John Pearsall for an explanation. *Id.* ¶ 17. Mr. Lausser texted Mr. Pearsall on September 27, 2022 regarding his disabled email account, to which Mr. Pearsall responded "we disabled the account after your termination letter." *Id.* ¶ 18. Mr. Lausser inquired as to what termination letter he was referring to, and Mr. Pearsall replied, "I believe HR sent you one previously but we will check tomorrow." *Id.* When Mr. Lausser stated he had not received a termination letter and asked what he had done wrong, Mr. Pearsall replied "nothing." *Id.*

### F. Deborah Hayes's Employment and Compensation by Elite Airways

Ms. Hayes began working for Elite Airways as a flight attendant on March 3, 2022. *Id.* ¶ 19. When Ms. Hayes began her employment at Elite Airways, she worked part-time at a daily rate of pay of $135.00, plus a $35 per diem. *Id.* ¶ 20. Plaintiffs submit Ms. Hayes worked May 8-10, 2022 and should have been paid $360 for three days of work and $105 for three days of per diem, for a total amount of $465. *Id.* The Company did not pay Ms. Hayes this amount. *Id.*

Ms. Hayes's pay rate was increased on or about July 1, 2022 to $144 per day with a per diem of $50. *Id.* ¶ 21. Ms. Hayes worked July 11-22, 2022 and calculates that she should have received $1,728 in daily pay, plus $600 of per diem, for a total of $2,328 for this trip. *Id.*

### G. Deborah Hayes's Communications with John Pearsall

On or about August 5, 2022, Ms. Hayes emailed Mr. Pearsall the following message: "can you please inform those of us who can't wait anymore where and how

6

to file for unemployment?  Where do you pay unemployment insurance, Maine, Florida, California?  Please help those of us who are still standing by you." *Id.* ¶ 22. Mr. Pearsall replied that she could file for unemployment in any state. *Id.*

On or about August 27, 2022, Ms. Hayes emailed Mr. Pearsall to ask the following question: "I would like to know [if] those of us that worked the last 3 months will be at least paid for all our expenses.  That is airplane tickets home, gas for rental care. Mine is close to $600? This is out of my pocket." *Id.* ¶ 23.  Mr. Pearsall replied, "Of course send the expense report to your supervisor for approval th[e]n on to accounting." *Id.*  Ms. Hayes submitted expense reports but never received reimbursement. *Id.*

On or about August 29, 2022, Ms. Hayes called Mr. Pearsall to express concern about her fellow flight attendants. *Id.* ¶ 24.  Mr. Pearsall asked if Ms. Hayes was representing an "employee group," to which Ms. Hayes responded that she was just representing herself, but that others had asked her about how to proceed. *Id.*  Mr. Pearsall said the other flight attendants should have gone to their supervisors and that, though funding was taking a little longer than anticipated, he would know more "within hours." *Id.*

### H.  Deborah Hayes's Communications with the South Dakota Department of Labor & Regulation

On or about September 15, 2022, Ms. Hayes inquired with the S.D. DOL about seeking unemployment compensation since she had not been paid since July 5, 2022. *Id.* ¶ 25.  The S.D. DOL told Ms. Hayes to file a notice of unpaid wages form through their website. *Id.*

## I.      Deborah Hayes's Termination by Elite Airways

On or about September 28, 2022, Hayes was told her employment at Elite Airways was terminated.  *Id.*  ¶ 26.

## III.    THE PLAINTIFFS' POSITION

### A.      Legal Claims in the Complaint

Plaintiffs bring four claims against the Defendants.  First, Plaintiffs assert Defendants violated the Maine Unpaid Wages statute, codified as 26 M.R.S. §§ 626 and 626-A (Count I), by failing to pay the Plaintiffs the wages they were each owed for the period worked between June 2022 and September 2022.  *Id.*  ¶ 28.  Plaintiffs continue to allege that Mr. Pearsall owned Elite Airways and was responsible for determining staffing, employees, and hours of payment, that they have demanded their unpaid wages, and that the Company has refused to pay.  *Id.*  ¶¶ 29-30. Plaintiffs assert the Defendants are liable for the amount of unpaid wages, an additional amount twice their unpaid wages, and attorney's fees and costs.  *Id.* ¶ 31.

Second, Plaintiffs allege Defendants violated Maine's Minimum Wage and Overtime law, codified as 26 M.R.S. § 664 (Count II), by willfully failing to pay minimum wage and overtime to each Plaintiff.  *Id.* ¶¶ 33-34.  Plaintiffs assert the Defendants are liable to Plaintiffs under this statute for unpaid wages, penalties, and attorney's fees and costs.  *Id.* ¶ 35.

Third, Plaintiffs claim the Defendants violated FLSA, codified as 29 U.S.C. § 213 (Count III).  *Id.* ¶¶ 37-39.  Plaintiffs submit the Defendants are liable for unpaid wages, overtime pay, penalties, and attorney's fees and costs under the FLSA.  *Id.* ¶ 40.

8

Fourth, Plaintiffs allege the Defendants violated the MWPA, codified as 26 M.R.S. § 833 (Count IV), by willfully firing the Plaintiffs, respectively, in retaliation for reporting the Company's failure to pay their wages. *Id.* ¶¶ 43-44. Plaintiffs submit they each reported the nonpayment in good faith to the S.D. DOL, exhausted their administrative remedies with the Maine Human Rights Commission (MHRC), and suffer and continue to suffer damages as a result of Defendants' actions. *Id.* ¶¶ 42, 45-46. Plaintiffs contend Defendants are liable to Plaintiffs for damages and attorney's fees and costs under the MWPA. *Id.* ¶ 47.

As relief, Plaintiffs request the Court "enter judgment in their favor," "award Plaintiffs damages for loss of wages," declare the Defendants' conduct to have been willful and in violation of Plaintiffs' rights under state and federal law, and award statutory penalties, nominal damages, prejudgment interest, and their "full costs, including reasonable attorney's fees, expert fees, and costs." *Id.* at 7.

### B.    Plaintiffs' Motion for Default Judgment

Based on Defendants' failure to respond to the allegations in the complaint, Plaintiffs move for default judgment to be entered against Elite Airways and Mr. Pearsall. *Pls.' Mot. for Default J.* Plaintiffs add that they filed a complaint with the MHRC against Elite Airways on November 9, 2022, to which the Company did not respond. *Id.* at 5. The MHRC issued a notice of failure to conciliate on February 22, 2024, which Plaintiffs aver satisfies their obligation to exhaust administrative remedies. *Id.*

After reciting the facts giving rise to this case, Plaintiffs begin by asserting Mr. Pearsall's "complete operational control of Elite [Airways]." *Id.* at 4. In his capacity

as Elite Airway's President, Plaintiffs aver he organized "dispatching airplanes," "was the contact person if problems of any sort developed, whether it was a scheduling problem, an equipment problem or a crew problem," "shopped for supplies for the gallies on the planes," and "was responsible for overseeing repair and maintenance." *Id.* Plaintiffs relay two anecdotes: first, when Mr. Lausser flew a plane with a cracked windshield and Mr. Pearsall came on board to complain about how much it would cost him to repair, and second, when Mr. Lausser decided it was unsafe to unload the plane during a winter trip and Mr. Pearsall called Mr. Lausser to demand he unload the plane and then fired Mr. Lausser before re-hiring him two days later.  *Id.* Plaintiffs further emphasize Mr. Pearsall's control over payroll decisions, pointing out that Mr. Pearsall addressed Ms. Hayes's class of trainees to explain the rate of pay and expected raises.  *Id.* at 5.  Further, Mr. Pearsall was the Company's point of contact when payroll stopped, made representations to employees about investors and imminent financing, and communicated with Ms. Hayes as to where and how to file her unemployment claim.  *Id.*

Turning to their legal argument, Plaintiffs aver the Defendants' default serves as an admission of liability.  *Id.*  However, Plaintiffs clarify that "[d]efault [j]udgment should only enter against [Mr.] Pearsall on Count III [the FLSA claim] . . .. [because] [u]nder Maine [l]aw, there is no individual liability of supervisors for violation of the [MWPA], or violation of Maine Wage [s]tatutes."  *Id.* at 6 (citing, e.g., *Fuhrmann v. Staples Office Superstore East, Inc.*, 58 A.3d 1083 (Me. 2012)).  However, they submit "an individual who has operational control over significant acts of the business [is]

liable for violations of the [FLSA]." *Id.* (citing *Baystate Alt. Staffing, Inc. v. Herman,* 163 F.3d 668 (1st Cir. 1998)).

### 1. Count I: Maine Unpaid Wages Statute, 26 M.R.S. §§ 626, 626-A

Beginning with Count I, brought against Elite Airways pursuant to 26 M.R.S. § 626, Plaintiffs aver they were not paid for the days they worked, despite repeated assurances from Mr. Pearsall that payment was forthcoming. *Id.* (citing *Lausser Aff.,* Attach. 4, *Messages Regarding Pay*; *Hayes Aff.*). Plaintiffs aver Mr. Lausser was unpaid as a salaried employee for three months, during which time he flew a trip for the Company. *Id.* at 6-7 (citing *Lausser Aff.* ¶¶ 3-5). Plaintiffs submit his unpaid wages during this time amount to $39,999.94, plus out-of-pocket benefit expenses of $6,253.00, totaling $46,252.00. Plaintiffs state that, under 26 M.R.S. § 626-A, Mr. Lausser is further entitled to liquidated damages in "an additional amount of twice the unpaid wages," which results in a total damages award to Mr. Lausser of $138,756 on Count I. *Id.* at 7. Plaintiffs aver Ms. Hayes's unpaid wages amount to $2,793 such that, with the additional amount of twice the unpaid wages as liquidated damages, her damages on Count I total $8,379. *Id.* Plaintiffs also assert their entitlement to attorney's fees on Count I. *Id.*

### 2. Count II: Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664

Plaintiffs further assert they are entitled to default judgment on Count II, their claim pursuant to 26 M.R.S. § 664, which Plaintiffs clarify is brought against the Company, not Mr. Pearsall, and is brought as an alternative to the Maine Unpaid Wages statute claim in Count I. *Id.* Plaintiffs aver "[t]he damages sought are the

same as pled in Count I," noting that the Maine Unpaid Wages statute "provides for an additional award of twice the amount of unpaid wages, whereas § 664 provides for an award of twice the wages." *Id.* Thus, an award of damages under Count I satisfies the damages claim in Count II. *Id.*

### 3. Count III: Federal Fair Labor Standards Act, 29 U.S.C. § 213

Plaintiffs turn next to Count III, brought under the FLSA, arguing that the statute applies an "economic reality" test to determine individual liability based on the individual's "operational control over significant aspects of the business, including compensation practices, and their role in causing the corporation to violate the FLSA." *Id.* (citing *Baystate Alternative Staffing, Inc.*, 163 F.3d 668). Plaintiffs report that courts addressing FLSA claims consider factors including "the individual's ownership interest, degree of control over financial affairs, and direct involvement in employment practices." *Id.* (citing *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26 (1st Cir. 2007)). Here, Plaintiffs say, Mr. Pearsall controlled "compensation decisions, investments, termination decisions and virtually every aspect of the operation of the business" and that he repeatedly made promises regarding payroll despite knowing employees were not getting paid. *Id.* at 8. Based on the foregoing, Plaintiffs urge the Court to enter default judgment against the Company and Mr. Pearsall on Count III.

With regard to damages on Count III, Plaintiffs posit that the FLSA permits employees to recover their full salary, "even if it is higher than minimum wage when the employer fails to pay the employee at all." *Id.* (citing 29 U.S.C. § 207; *Helix Energy*

12

*Solutions Group, Inc. v. Hewit*, 598 U.S. 39 (2023)). They assert the FLSA also provides for liquidated damages, which are considered compensation, not a penalty. *Id.* (citing *Hewit*, 598 U.S. 39). An employer bears the burden of proving a failure to pay wages was in good faith, 29 U.S.C. § 260, which Plaintiffs insist was not satisfied here. *Id.* Here, Plaintiffs say, Mr. Lausser is entitled to three months of wages, plus medical expenses and liquidated damages, in the total amount of $92,504. *Id.* at 9. They say Ms. Hayes is entitled to two pay periods, plus liquidated damages, in the total amount of $5,586. *Id.* Plaintiffs also request attorney's fees. *Id.*

### 4. Count IV: Maine Whistleblower Protection Act, 26 M.R.S. § 833

Finally, with regard to Count IV, the MWPA claim brought only against Elite Airways, Plaintiffs submit they "must establish that (1) the employee engaged in protected activity; (2) [] the employee experienced adverse employment action; and (3) the[e]r[e] was a causal connection between the two." *Id.* (citing *Handlin v. Broadreach Pub. Relations, LLC*, 265 A.3d 1008 (Me. 2022)). Here, Plaintiffs emphasize that each Mr. Lausser and Ms. Hayes filed complaints with the S.D. DOL regarding nonpayment of their wages and were each respectively terminated shortly thereafter. *Id.* Mr. Lausser was told he had done nothing wrong to warrant termination, while Ms. Hayes was terminated following Mr. Pearsall's inquiries regarding organizing other employees. *Id.* Plaintiffs submit liability on Count IV has thus been established. *Id.*

With regard to damages on Count IV, Plaintiffs contend they are entitled to damages in the amount of back pay. *Id.* Beginning with Mr. Lausser, Plaintiffs

submit he was unemployed for six months, during which time he accrued $80,000 in back pay damages and, further, has since secured employment at a lower rate of compensation then he was paid at the Company, resulting in additional back pay damages of $52,159.99.  *Id.* (citing *Lausser Decl.* ¶ 11).  Mr. Lausser thus claims a total amount of back pay damages of $132,159.99.  *Id.*  Ms. Hayes, by contrast, was a part-time employee and has retired since being terminated by Elite Airways.  *Id.* Thus, Ms. Hayes does not seek back pay damages, instead claiming only $497.52 in unpaid expenses.  *Id.*

Finally, Plaintiffs argue each statutory claim provides for an award of attorney's fees, which are calculated using the lodestar method in which counsel's hourly rate is multiplied by the hours spent on the case.  *Id.* at 10 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  They report that a party seeking attorney's fees must submit materials setting forth the hourly rate and description of the work, *id.* (citing *Hutchinson ex rel. v. Patrick*, 636 F.3d 1 (1st Cir. 2011)), and request attorney's fees and expenses in the amount of $9,565.  *Id.* (citing *Morris Aff.*).

### C.    Plaintiffs' Supplemental Brief and Accompanying Affidavit

In their supplemental brief, Plaintiffs "clearly delineate damages by statutory count and allocate liability as between [Elite Airways] and [] John Pearsall individually."  *Pls.' Suppl. Brief* at 1.  After reciting the factual background giving rise to this dispute, *id.* at 1-4, Plaintiffs recognize that their four statutory claims "create overlapping rights" and explain it submits its brief in two parts: "Part I[:] the damages available under each statutory claim[, . . . and] Part II[:] the liability and

damages that should be awarded in light of overlapping claims under both the Federal and the Maine state statutes." *Id.* at 4.

### 1. Damages Available on Each Count

#### a. Count III: Federal Fair Labor Standards Act, 29 U.S.C. § 213

Beginning with Count III, Plaintiffs aver that Ms. Hayes "as a nonexempt employee is entitled to recover the wages she was not paid while working for Elite Airways under the [FLSA]." *Id.* Pursuant to 29 U.S.C. § 216(b), Plaintiffs submit an employer who fails to pay minimum wage "shall be liable for their unpaid minimum wages . . . and in an additional equal [amount] as liquidated damages." *Id.* (quoting 29 U.S.C. § 216(b) (quotation corrected)). Plaintiffs claim further that when an employer fails to pay a covered employee any wages at all, that employee may bring a FLSA claim for the contracted wages. *Id.* (citing *Brown v. J&W Grading, Inc.*, 390 F. Supp. 3d 337, 355 (D.P.R. 2019)). However, Plaintiffs say, the statute exempts certain types of employees from its minimum wage and overtime provisions. *Id.* at 5 (citing *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983)).

Plaintiffs concede Mr. Lausser is "a salary employee, paid on a salary basis in excess of the required statutory amount" and thus cannot recover damages under the FLSA. *Id.* Plaintiffs contrast this with Ms. Hayes, who they submit "was an hourly, nonexempt employee" and thus seeks remedies available under the FLSA, among which Plaintiffs include "(i) [u]npaid wages and overtime compensation, including any amounts contractually agreed to above the minimum wage, (ii) An equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b), unless the employer can

demonstrate good faith and reasonable grounds for the underpayment; (iii) Pre- and post-judgment interest as allowed by law, and (iv) Reasonable attorney's fees and costs incurred in prosecuting the action." *Id.*

### b.    Count I: Maine Unpaid Wages Claim

Regarding their claim under 26 M.R.S. §§ 626 and 626-A, Plaintiffs submit that, by statute, an employer must promptly pay out all wages earned and due to employees upon termination of employment. *Id.* at 5-6 (citing 26 M.R.S. § 626; *Giguere v. Port Resources, Inc.*, 927 F.3d 43, 51-52 (1st Cir. 2019)). Should an employer fail to do so, a terminated employee may bring a claim for "(i) All unpaid wages and health benefits, including earned but unpaid vacation time, (ii) Liquidated damages in an amount equal to twice the amount of unpaid wages or health benefits, pursuant to 26 M.R.S.[] § 626-A, (iii) Interest on the unpaid wages at the statutory rate, (iii) Costs of suit and reasonable attorney's fees." *Id.* at 6.

### c.    Count II: Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664

Plaintiffs submit their claim brought pursuant to 26 M.R.S. § 664 "parallels federal wage protections" and the remedies available "mirror those available under the Maine Unpaid Wages Statute mentioned above." *Id.* Plaintiffs note "[a] plaintiff may not receive two damages awards for the same loss, therefore, an award of damages under Cou[n]t II of the complaint in addition to the award under Count III for the FLSA claim cannot be granted." *Id.* (citing *Giguere*, 927 F.3d at 51).

> **d.    Count IV: Maine Whistleblower Protection Act, 26 M.R.S. § 833**

Regarding their claim under 26 M.R.S. § 833, Plaintiffs aver the MWPA "prohibits employers from retaliating against employees who, in good faith, report or refuse to participate in activities that violate the law or pose a risk to health or safety." *Id.* at 6-7 (citing *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 46 (1st Cir. 2016)). Employees who have suffered retaliation in violation of the MWPA may bring a private action against their employer under the Maine Human Rights Act (MHRA), they say. *Id.* at 7 (citing *Harrison*, 811 F.3d at 46; 5 M.R.S. §§ 4572(1)(A), § 4621). Plaintiffs report that the MHRA provides for recovery of "back pay damages for the lost income caused by the discrimination, compensatory damages and attorney[']s fees." *Id.* (citing M.R.S. § 4613; *Walsh v. Town of Millinocket*, 28 A.3d 610, 613 (Me. 2011)). Plaintiffs submit each Plaintiff, respectively, was terminated for reporting their unpaid wages to the S.D. DOL. *Id.*

> **2.    Liability and Cumulative Damages Under Overlapping Claims**

> > **a.    Count II: Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664**

> > > **i.    Liability**

Plaintiffs submit Elite Airways and Mr. Pearsall should be held jointly and severally liable under the FLSA, "specifically for the failure to pay wages owed to Plaintiffs as required under 29 U.S.C. § 207." *Id.*

First, Plaintiffs note that the FLSA defines "employer" to mean "any person acting directly or indirectly in the interest of an employer in relation to an employee,"

*id.* (citing 29 U.S.C. § 203(d)) and emphasizes that the United States Court of Appeals for the First Circuit has interpreted this statute broadly to hold liable "individual corporate officers who exercise operational control over the employment relationship." *Id.* (citing *Chao*, 493 F.3d at 34). Plaintiffs reiterate that, after applying the "economic reality" test articulated by the First Circuit in *Baystate Staffing. Inc.*, 163 F. 3d at 677-78, the Court should hold Mr. Pearsall liable as an "employer" under the FLSA based on his "significant ownership interest" in the Company, "most senior leadership role," "final authority over financial the decisions," "direct operational control over the [C]ompany's employment practices," and "affirmative choice to maintain business operations without satisfying statutory wage obligations." *Id.* at 7-9. Comparing this case to *Manning v. Boston Medical Center*, 725 F.3d 34 (1st Cir 2013), Plaintiffs contend Mr. Pearsall and Elite Airways should be held jointly and severally liable for violations of the FLSA, and Plaintiffs "are entitled to recover unpaid wages, liquidated damages, and attorney's fees from either or both Defendants." *Id.* at 9.

## ii.    Damages

Under 29 U.S.C. § 216(b), Plaintiffs say, an employer who violates the wage provisions of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages," as well as reasonable attorney's fees and costs. *Id.* Plaintiffs submit liquidated damages are mandatory unless an employer can establish their failure to pay was made in good

faith and on reasonable belief that its conduct was lawful." *Id.* (citing 29 U.S.C. § 260).

Plaintiffs concede that Mr. Lausser is exempt from the FLSA but argue Ms. Hayes "is entitled to her unpaid wages total [of] $2,793.00, with an equal amount due in liquidated damages, $2,793.00, and statutory interest of $97.01, for a total of $5,683.01." *Id.* at 10.  Adding a request for attorney's fees in the amount of $18,565, Plaintiffs submit the Defendants are jointly and severally liable to Ms. Hayes in the total amount of $24,248.01." *Id.*

### b.    Counts I, II, and IV: Maine State Law Claims

#### i.    Liability

Plaintiffs concede that "[u]nder Maine law, the company's liability does not extend to corporate officers or supervisors for violations of the state's employment statutes absent clear legislative authority" and that the Law Court has expressly declined to hold individuals liable on claims brought pursuant to the MWPA, Maine Unpaid Wages statute, or Maine Minimum Wage and Overtime statute.  *Id.* at 10-11 (collecting cases).  Plaintiffs therefore seek damages against only Elite Airways on Counts I, II, and IV.  *Id.* at 11.

#### ii.    Damages

##### aa.    Count I: Maine Unpaid Wages Claim

After reciting the damages available under 26 M.R.S. § 626-A for violations of 26 M.R.S. § 626, Plaintiffs note that Ms. Hayes "does not seek recovery of her wages that were not paid so as to avoid double recovery."  *Id.* at 12 (citing *Giguere*, 927 F.3d

at 51); *but see also contra id.* at 13 ("With respect to [] Ms. Hayes, no damages were incurred under this statute, and therefore no recovery is sought on her behalf pursuant to 26 M.R.S.[] § 626-A"). However, asserting Mr. Lausser is an exempt employee unable to recover under the FLSA, Plaintiffs aver he "seeks unpaid wages and health care out of pockets under 26 M.R.S.[] § 626-A." *Id.* Plaintiffs note that, while the S.D. DOL estimated his unpaid wages at $39,999, that number was calculated as of the date of filing of Mr. Lausser's administrative complaint with the S.D. DOL on September 15, 2022, despite Mr. Lausser continuing to work for the Company until September 27, 2022. *Id.* Plaintiffs submit, for the fifteen-week period of employment during which Mr. Lausser received no wages, he is owed $49,047.57 in unpaid wages. *Id.* at 13. Noting 26 M.R.S. § 626-A authorizes damages equal to twice the amount owed, unpaid health benefits, liquidated damages, and statutory interest, Plaintiffs submit Mr. Lausser is entitled to $49,047.57 in unpaid wages, $6,253 in unpaid health benefits, $110,601.14 in liquidated damages, and $1,703.52 in statutory interest, for a total damages on Count I of $167,605.23. *Id.* at 13.

### bb.    Count II: Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664

Plaintiffs note the remedies available under 26 M.R.S.A. § 664 "mirror those provided under 26 M.R.S.A. § 626" and thus "to avoid duplicate recovery, Plaintiffs do not seek damages under Count II." *Id.*

### cc.    Count IV: Maine Whistleblower Protection Act, 26 M.R.S. § 833

After reiterating their claim that the Company is liable under the MWPA, Plaintiffs submit the statute entitles them to damages for "(1) compensatory and

punitive damages stemming from the unlawful retaliation itself, and (2) economic damages stemming from the loss of employment, including back pay and front pay." *Id.* at 13-14 (citing *Sullivan v. St. Joseph's Rehab. & Residence*, 2016 ME 107, ¶¶ 13–15, 143 A.3d 1283). After defining "back pay" as "wages lost between the time of the retaliatory action and the date of judgment," *id.* at 14 (citing *Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 379 (1st Cir. 2004)), Plaintiffs submit Mr. Lausser suffered significant economic harm as a result of the Defendant's retaliation, including six months of unemployment, resulting in a back pay claim of $80,000 based on his annual salary at Elite Airways of $160,000. *Id.* Though he has subsequently obtained new employment, Plaintiffs posit his compensation is substantially less than his Elite Airways salary, resulting in a $52,159.99 differential as of the date of default judgment. *Id.* Plaintiffs contend Mr. Lausser "is entitled to back pay and front pay damages totaling $132,159.99 to date which added to the unpaid health benefits and its liquidated damages results in a total amount for damages under the Maine [l]aw equal to $144,665.99." *Id.*

Plaintiffs submit Ms. Hayes, a part-time employee who has since retired, does not seek a back pay award pursuant to Count IV, but does request her unpaid expenses in the amount of $497.52. *Id.* at 14-15.

### iii.     Attorney's Fees

Plaintiffs further request an award of attorney's fees, which they argue are authorized by statute on each of their state law claims and should be calculated under on the lodestar method based on supporting materials submitted by the petitioning

party setting forth the hourly rate and description of the work. *Id.* at 15. Plaintiffs direct the Court to the attached declaration of their counsel, setting forth the work performed and her hourly rate, in the total requested amount of $18,565. *Id.* (referencing *Morris Suppl. Aff.*).

## IV.    LEGAL STANDARD

In the event that a party who is "neither a minor nor an incompetent person" is defaulted "for not appearing" and the plaintiff's claim "is for a sum certain or a sum that can be made certain by computation," Federal Rule of Civil Procedure 55(b)(1) requires that, upon the plaintiff's request, the Clerk of Court enter judgment for plaintiff in the amount requested, plus costs. FED. R. CIV. P. 55(b)(1). If the plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, the party seeking default "must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). Should the court need to conduct further investigation before entering a judgment, it "may conduct hearings or make referrals." *Id.*

In reviewing a party's motion for default judgment under Rule 55(b)(2), the court "may examine" the party's claims, "assum[ing] that all well pleaded factual allegations are true," to determine if the party "alleges a cause of action." *Davis v. Theriault*, No. 1:22-cv-00275-JDL, 2023 U.S. Dist. LEXIS 153902, at *94 (D. Me. Aug. 31, 2023) (quoting *Quirindongo Pacheco*, 953 F.2d at 16). At this stage, the defaulting party "is taken to have conceded the truth of the factual allegations in the complaint."

*Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir. 2002) (quoting *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)).

"The Court . . . first assesses its jurisdiction and the sufficiency of the Complaint to establish [the defendant]'s liability." *Elektra Ent. Grp., Inc. v. Carter*, 618 F. Supp. 2d 89, 92 (D. Me. 2009). "Once liability is established, 'any request for monetary relief through a default judgment must be supported by proof,' unless such a request is for a 'sum certain' that is 'readily ascertainable from the complaint.'" *Idexx Distrib. v. Lauridia*, No. 2:19-cv-00412, 2020 U.S. Dist. LEXIS 8588, at *2 (D. Me. Jan. 17, 2020) (first citing FED. R. CIV. P. 55(b)(2); then citing *KPS & Assocs. Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003); and then citing *In re The Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002)).

"Finally, the law abhors duplicative recoveries. That is to say, a plaintiff who is injured by reason of a defendant's behavior is, for the most part, entitled to be made whole -- not to be enriched." *Dopp v. HTP Corp.*, 947 F.2d 506, 517 (1st Cir. 1991); *accord Giguere*, 927 F.3d at 51 ("Maine law provides that a plaintiff may not receive two damages awards for the same loss") (citing *Theriault v. Swan*, 558 A.2d 369, 372 (Me. 1989)).

## V.    DISCUSSION

In line with the First Circuit's two-step approach, the Court first resolves the Defendants' respective liability on each of the Plaintiffs' claims before turning to assess, for claims on which liability has been proven, the damages available on each count. The Court then turns to calculating the appropriate damages award with an

eye toward avoiding impermissible double damages before finally considering the availability of attorney's fees.

### A.    Assessment of Liability

#### 1.    Count I: Maine Unpaid Wages Statute, 26 M.R.S. §§ 626, 626-A

Under the Maine Unpaid Wages statute, 26 M.R.S. § 626, upon cessation of employment, "[a]n employee leaving employment must be paid in full no later than the employee's next established payday."  26 M.R.S. § 626.  The statute authorizes "[a]n action for unpaid wages under this section may be brought by the affected employee or employees or by the Department of Labor on behalf of the employee or employees."  *Id.*

##### a.    Liability to Each Plaintiff

###### i.    John Lausser

Mr. Lausser asserts he was employed by Elite Airways "from May 10, 2021 through September 27, 2022" and that "[t]he last paycheck [he] received was dated July 5, 2022 for the pay period between June 1, 2022 through June 15, 2022." *Lausser Aff.* ¶ 3 (citing *id.*, Attach. 1, *Earnings Statement*).  He explains that, while employed by Elite Airways through the summer of 2022, that Mr. Pearsall repeatedly gave assurances that payroll would process payment and that Mr. Lausser flew a final trip relying on those promises from August 2, 2022 through August 4, 2022.  *Id.* ¶ 4.  Mr. Lausser then received information that he had been terminated by Elite Airways on September 27, 2022.  *Id.* ¶¶ 6-7.  Mr. Lausser further alleges that "[i]n May and June

2022, Elite did not pay the insurance premiums" and that "[a]s a result, [he] had a dental bill [he] had to pay out of pocket in the amount of $6,253.00." *Id.* ¶ 12.

Assuming the truth of Mr. Lausser's allegations in light of the Defendants' default, *see Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes that Mr. Lausser has sufficiently pleaded that, following cessation of his employment at Elite Airways, the Defendants failed to pay Mr. Lausser the amounts owed by his next established payday in violation of 26 M.R.S. § 626.

### ii.    Deborah Hayes

Similarly, Ms. Hayes alleges she was employed by Elite Airways from March 3, 2022 through September 28, 2022 as a flight attendant. *Hayes Aff.* ¶ 1. She alleges she "worked a trip from May 8-10, 2022 . . .. [but] did not get paid." *Id.* ¶ 3. Further, she worked a second trip from July 11-22, 2022" but reiterates she "was not paid any wages for the two trips [she] took for the company." *Id.* ¶¶ 4, 10. In addition to her daily wages and per diem, Ms. Hayes claims Defendants failed to reimburse her "out-of-pocket expenses that were not covered by the per diem" such as "air fare to fly home from the trip, and Lyft transportation." *Id.* ¶ 10.

Assuming the truth of Ms. Hayes's claims, *see Ortiz-Gonzalez*, 277 F.3d at 62, the complaint establishes the basis for holding the Defendants liable to Ms. Hayes for violating 26 M.R.S. § 626.

### b.    Liability of Each Defendant

Under the Maine Unpaid Wages statute, "[a]ny *employer* is liable to the employee or employees for the amount of unpaid wages and health benefits." 26 M.R.S. § 626-A (emphasis supplied).

### i.    Elite Airways

The complaint pleads that Elite Airways, a limited liability company, operated as an airline providing passenger service with a principal place of business in Portland, Maine. *Compl.* ¶ 2.

Mr. Lausser claims he "was employed by [Elite Airways] from May 10, 2021 through September 27, 2022" but received his final paycheck for the period of June 1-15, 2022. *Id.* ¶¶ 1, 10. He asserts "[d]uring the three months that [he] worked without pay, Pearsall made repeated assurances that [he] would be paid," *Lausser Aff.* ¶ 3, but that he was not paid those wages or reimbursed for dental expenses out of pocket as a result of unpaid insurance premiums while employed or subsequent to his termination. *Id.* ¶¶ 11, 12.

Ms. Hayes also alleges that she was employed by Elite Airways as a flight attendant and that, as her employer, Elite Airways failed to pay her wages. As stated in the complaint, Elite Airways is a limited liability company which employed Ms. Hayes from March 3, 2022 through September 28, 2022. *Compl.* ¶ 2; *see also Hayes Aff.* ¶ 1 ("I am a flight attendant and was employed by [Elite Airways] from March 3, 2022 through September 28, 2022 as a flight attendant"). She was not paid for her work on trips from May 8-10, 2022 or from July 11-22, 2022. *Hayes Aff.* ¶¶ 3-4.

Accepting the truth of these allegations, *Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes Mr. Lausser and Ms. Hayes, respectively, may hold Elite Airways liable as their employer for failure to pay owed wages "in full no later than the employee's next established payday" upon cessation of their employment pursuant to 26 M.R.S. § 626.

26

### ii.    John Pearsall

Noting "[u]nder Maine law, the company's liability does not extend to corporate officers or supervisors for violations of the state's employment statutes absent clear legislative authority," Plaintiffs "seek damages against Elite Airways only" on the state law counts, including Count I.  *Pls.' Suppl. Brief* at 11.

26 M.R.S. § 626 gives a cause of action against "an employer."  *See* 26 M.R.S. § 626 ("*An employer* found in violation of this section is liable for the amount of unpaid wages and all accrued vacation pay that must be paid to the employee or employees on cessation of employment pursuant to this section") (emphasis supplied).  26 M.R.S. § 626-A similarly contemplates the potential liability of "any employer."  *See* 26 M.R.S. § 626-A.  In *Thayer Corp. v. Reed*, No. 2:10-cv-00423-JAW, 2011 U.S. Dist. LEXIS 74229 (D. Me. July 11, 2011), this Court noted, on a claim brought under 26 M.R.S. §  626-A against a corporation and its eponymous owner, that "Maine's Wage Payment Statute contemplates actions against employers" and concluded that "Mr. Thayer's status as Thayer Corp.'s president is not sufficient to hold him individually liable for conduct attributed to Thayer Corp" because the plaintiff had neither alleged Mr. Thayer was his employer nor "give[n] the Court [] reason to ignore the distinct identities of Mr. Thayer, the individual, and Thayer Corp., the corporation." *Thayer Corp.*, 2011 U.S. Dist. LEXIS 74229, at *33-34 (citing *Mowles v. Predictive Control Sys., LLC*, Nos. Civ.A. CV-02-355, Civ.A. CV-02-356, 2002 Me. Super. LEXIS 190, at * 5 (Me. Super. Oct. 22, 2002)).

Here, Plaintiffs have not argued that Mr. Pearsall should be held individually liable under this statute and the Court agrees with the Plaintiffs that, consistent with

*Thayer Corp.*, Mr. Pearsall's ownership interest and role do not establish a basis to hold him individually liable under the Maine Unpaid Wages statute. The Court concludes Plaintiffs cannot hold Mr. Pearsall liable on Count I for violations of 26 M.R.S. § 626.

### 2. Count II: Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664

Pursuant to 26 M.R.S. § 664, "[e]xcept as otherwise provided in this subchapter, an employer may not employ any employee at a rate less than the rates required by this section." 26 M.R.S. § 664. Continuing, this statute provides for a minimum hourly wage, as of January 1, 2021, of $12.00 an hour and to be increased each year thereafter to correspond with any increases in the cost of living. *Id*. The statute further provides that "[a]n employer may not require an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week." *Id*.

#### a. Liability to Each Plaintiff

##### i. John Lausser

Again, Mr. Lausser alleges Defendants "failed to pay minimum wage and overtime as required by 26 M.R.S.[] § 664" because he was employed by Elite Airways "through September 27, 2022" but was not paid wages for work after June 15, 2022. *Compl.* ¶¶ 1, 10; *accord Lausser Aff.* ¶¶ 3, 11-12. Accepting these allegations as true in light of the Defendants' default, *Ortiz-Gonzalez*, 277 F.3d at 62, a failure to pay an employee any wages for over three months of employment establishes the Defendants' violation of the minimum wage and overtime requirements of 26 M.R.S. § 664 for

28

their failure to pay Mr. Lausser any wages for work between June 16, 2022 and September 27, 2022.

### ii.      Deborah Hayes

As previously explained, Ms. Hayes alleges Elite Airways employed her "from March 3, 2022 through September 28, 2022 as a flight attendant," that she "worked a trip from May 8-10, 2022" and a second "trip from July 11-22, 2022," but that she "was not paid any wages for the two trips [she] took for the company." *Hayes Aff.* ¶¶ 1, 3-4, 10.

Assuming the truth of Ms. Hayes's claims, *see Ortiz-Gonzalez*, 277 F.3d at 62, the Defendants' failure to pay an employee her wages for fifteen days of employment violates the minimum wage and overtime requirements of 26 M.R.S. § 664.

### b.      Liability of Each Defendant

Under 26 M.R.S. § 664, "an employer" may be held liable for failure to comply with minimum wage and overtime requirements under Maine state law. *See* 26 M.R.S. § 664 ("Except as otherwise provided in this subchapter, *an employer* may not employ any employee at a rate less than the rates required by this section . . .. *An employer* may not require an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week") (emphasis supplied).

### i.      Elite Airways

Restated briefly, the complaint pleads that Elite Airways, a limited liability company with a principal place of business in Portland, Maine, employed Mr. Lausser "from May 10, 2021 through September 27, 2022" and Ms. Hayes "from March 3, 2022

through September 28, 2022." *Compl.* ¶¶ 1-3; *Lausser Aff.* ¶ 3; *Hayes Aff.* ¶ 1.  Elite Airways did not pay Mr. Lausser for the period of his employment between June 16, 2022 and his termination on September 27, 2022, nor did it pay Ms. Hayes for trips she worked from May 8-10, 2022 and from July 11-22, 2022.  *Lausser Aff.* ¶ 3-4; *Hayes Aff.* ¶¶ 3-4.

Accepting the truth of these allegations, *Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes Elite Airways is liable to each Plaintiff, respectively, for its failure to pay minimum wages required under 26 M.R.S. § 626.

## ii.    John Pearsall

"Plaintiffs' claims pursuant to 26 M.R.S.[] § 664 are sought against [Elite Airways], *not* against Defendant Pearsall."  *Pls.' Mot. for Default J.* at 7 (Plaintiffs' emphasis).  As such, Plaintiffs have functionally waived an argument for holding Mr. Pearsall individually liable under the Maine Minimum Wage and Overtime law.  *See Zannino*, 895 F.2d at 17.

The Plaintiffs have correctly limited their claims under this statute to Elite Airways.  District of Maine precedent is clear that an individual owner cannot be held liable as an employer "without a clear directive from the Maine Legislature or the Law Court to do so."  *See Bradford v. Naples Causeway Dev., LLC*, No. 2:21-cv-00015-NT, 2022 U.S. Dist. LEXIS 87338, at *23-24 (D. Me. May 16, 2022) ("The Maine statute does not define the term 'employer' as the FLSA does, *see* 26 M.R.S. § 664, and the Maine Supreme Judicial Court has not yet decided whether an individual in [individual defendant's] position—the sole member of a limited liability company who exercises some degree of control over the company's employment practices—can be

found jointly liable under Maine law.  For that reason, I follow the lead of other judges in this District and decline to extend personal liability to [individual defendant] without a clear directive from the Maine Legislature or the Law Court to do so") (citing *Saunders v. Getchell Agency*, No. 1:13-cv-00244-JAW, 2014 U.S. Dist. LEXIS 16728, at *22 (D. Me. Feb. 11, 2014) ("[T]his Court declines to extend Maine wage and hour liability to corporate officers and owners in the absence of a clearer legislative directive to do so"); *Affo v. Granite Bay Care, Inc.*, No. 2:11-cv-482-DBH, 2013 U.S. Dist. LEXIS 76019, at *30 (D. Me. May 30, 2013) ("Given both the Maine legislature's silence on the definition of 'employer' and the reluctance of Maine courts to hold shareholders individually liable, I decline to extend liability under Maine's wage and hour law to individual shareholders and officers")).

The Court concludes Mr. Pearsall is not liable for violations of 26 M.R.S. § 664 under Count II of Plaintiffs' complaint.

### 3.    Count III: Federal Fair Labor Standards Act, 29 U.S.C. § 213

The FLSA requires covered employees to be compensated at a federally determined minimum wage of $7.25 per hour, 29 U.S.C. § 206, and requires covered employees who work more than forty hours to be compensated at a rate "not less than one and one-half times the regular rate at which he is employed" for all time worked in excess of forty hours.  29 U.S.C. § 207.

### a.    Liability to Each Plaintiff

### i.    John Lausser

In the motion for default judgment, Plaintiffs argue that Mr. Lausser is entitled to "three months of wages plus medical expenses, plus liquidated damages = $92,504." *Id.* at 9. However, in their supplemental brief, Plaintiffs abruptly change course, positing that he is not entitled to relief under the FLSA "since Mr. Lausser was an ex[]empt employee." *Pls.' Suppl. Br.* at 10; *see also id.* at 5 ("Mr. Lausser was a salary exempt employee, paid on a salary basis in excess of the required statutory amount. Therefore, he cannot recover damages for failure to pay his wages under the FLSA"). For purposes of this order, the Court accepts Plaintiffs' determination they are unable to press a FLSA claim on behalf on Mr. Lausser, as pleaded in Count III.

### ii.    Deborah Hayes

In contrast, however, Plaintiffs assert Ms. Hayes was "an hourly, nonexempt employee" entitled to seek damages for violations of the FLSA. *Id.* In their complaint, Plaintiffs assert Ms. Hayes worked three days, May 8-10, 2022, and an additional twelve days, July 11-22, 2022, without being paid. *Compl.* ¶¶ 20-21.

Assuming, in light of the Defendants' default, that "all well pleaded factual allegations are true," *Quirindongo Pacheco*, 953 F.2d at 16, the Court concludes the failure to compensate Ms. Hayes at all for fifteen days of work violates the FLSA's minimum wage requirements and she is entitled to assert a claim under that statute. The Court thus proceeds to consider whether either, or both, of the Defendants satisfies the statutory definition of "employer" for the purposes of FLSA liability.

### b.    Liability of Each Defendant

Pursuant to 29 U.S.C. § 216, "[a]ny employer who violates the provisions of section 6 or section 7 of this Act [29 USCS § 206 or 207] shall be liable to the employee or employees affected . . .."  29 U.S.C. § 216(b).  The FLSA defines an "employer" as "includ[ing] any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).

### i.    Elite Airways

The FLSA defines a "person" to mean "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).  As explained above, Ms. Hayes alleges Elite Airways, a limited liability company, employed her from March 3, 2022 through September 28, 2022. *Compl.* ¶¶ 2-3; *see also Hayes Aff.* ¶¶ 1, 3-4, 10.  Accepting the truth of these allegations, *Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes Ms. Hayes may hold Elite Airways liable as her employer for failure to pay wages as required by the FLSA.

### ii.    John Pearsall

"Although the First Circuit has held that not every corporate officer with authority over payroll matters is subject to personal liability, '[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'"  *Bradford*, 2022 U.S. Dist. LEXIS 87338, at *21 (quoting *Chao*, Inc., 493 F.3d at 34)).  In determining when to

hold individuals liable as an "employer," the First Circuit applies an "economic reality" test, which considers "(1) 'the significant ownership interest of the corporate officers; (2) their operational control of significant aspects of the corporation's day to day functions, including compensation of employees; and (3) the fact that they personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees.'" *Id.* (quoting *Baystate Alt. Staffing, Inc*, 163 F.3d at 677-78).

Here, the complaint alleges Mr. Pearsall "had ownership of Elite and was responsible for determining staffing, employees and hours of payment." *Compl.* ¶ 29. The *Bradford* Court explained that, "[a]s to the first element, an ownership stake is 'highly probative of an individual's employer status' because 'it suggests a high level of dominance over the company's operations' and, relatedly, the individual's 'ability to "cause the corporation to undercompensate employees."'" *Bradford*, 2022 U.S. Dist. LEXIS 87338, at *21-22 (quoting *Manning*, 725 F.3d at 43) (in turn quoting *Baystate*, 163 F.3d at 678). The allegation that Mr. Pearsall had an ownership stake in Elite Airways, taken as true, is thus significant in determining Mr. Pearsall's personal liability under the FLSA.

Turning to the second element, "the First Circuit has found operational control where a corporate officer 'had ultimate control over the business's day-to-day operations' and was the person 'principally in charge of directing employment practices, such as hiring and firing employees . . . and setting employees' wages and schedules.'" *Id.* at *22 (quoting *Chao*, 493 F.3d at 34) (alterations in *Bradford*). Here,

34

the Plaintiffs specifically allege Mr. Pearsall "was responsible for determining staffing, employees and hours of payment." *Compl.* ¶ 29. Accepting the truth of this allegation, Mr. Pearsall's control of employment and payment decisions weighs in favor of his personal liability as an "employer" under the FLSA.

Continuing to the third element, the Plaintiffs allege specific involvement of Mr. Pearsall in continuing to operate the business despite knowledge of the Company's financial constraints, including repeatedly insisting payments were imminent while asking the Plaintiffs to continue working despite payment issues. *See Compl.* ¶¶ 7-26. Assuming the truth of these allegations, the Court reasonably concludes Mr. Pearsall "personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees.'" *Bradford*, 2022 U.S. Dist. LEXIS 87338, at *21-22 (citing *Baystate Alt. Staffing, Inc.*, 163 F.3d at 677-78).

Based on the foregoing, the Court concludes that the Plaintiffs' well pleaded facts establish that Mr. Pearsall was "instrumental in 'causing'" those violations, *Chao*, 493 F.3d at 34 (citing *Baystate*, 163 F.3d at 678), such that he meets the FLSA's definition of "employer." Therefore, as a matter of law, Mr. Pearsall can be held individually liable under the FLSA for the Company's statutory violations. *See Bradford*, 2022 U.S. Dist. LEXIS 87338, at *23 (reaching the same conclusion and holding owner individually liable under FLSA).

### 4.    Count IV: Maine Whistleblower Protection Act, 26 M.R.S. § 833

In relevant part, 26 M.R.S. § 833 provides that:

> No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
>
> > **A.** The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States[.]

26 M.R.S. § 833(1)(A). Maine courts have held that, to hold an employer liable under the MWPA, a plaintiff must show: "(1) she engaged in activity protected by the [M]WPA; (2) she experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Handlin v. Broadreach Public Relations, LLC*, 2022 ME 2, ¶ 12, 265 A.3d 1008 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 10, 13 A.3d 773 (alterations and quotation marks omitted by *Handlin* Court).

"Maine law provides a private right of action for a violation of the [MWPA]," *Harrison*, 811 F.3d at 46 (quoting *Murray v. Kindred Nursing Centers West LLC*, 789 F.3d 20, 25 (1st Cir. 2015) (in turn citing 5 M.R.S. §§ 4572(1)(A), 4621; *Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, 954 A.2d 1051, 1053 & n.2 (Me. 2008) ("The [MHRA] provides a right of action to persons who have been subject to unlawful discrimination, including whistleblowers who have suffered retaliatory discharge or other adverse employment actions"))).

36

### a.    Liability to Each Plaintiff

### i.    John Lausser

The complaint alleges that, on or about September 15, 2022, Mr. Lausser "inquired with the [S.D. DOL] about seeking unemployment compensation since he had not been paid since July 5, 2022" and was told to file a notice of unpaid wages form. *Compl.* ¶ 14; *Lausser Aff.* ¶ 5. On or around that same day, the S.D. DOL notified Mr. Pearsall of Mr. Lausser's unpaid wages claim. *Compl.* ¶ 15; *Lausser Aff.* ¶ 5. Defendants terminated Mr. Lausser's employment on September 27, 2022 and, when Mr. Lausser inquired as to the basis for his termination, was told he had done nothing wrong. *Compl.* ¶ 18; *Lausser Aff.* ¶ 7.

Taking these allegations as true, *Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes Mr. Lausser has established the elements of a violation under the MWPA. First, as explained in the context of Counts II and III, the Defendants' failure to pay Mr. Lausser any wages for a three-month period violates the federal and state minimum wage statutes. As such, Mr. Lausser's unpaid wages claim submitted to the S.D. DOL constitutes a report of conduct by an employer that "the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States," 26 M.R.S. § 833(1)(A), and, as such, is an action protected under the MWPA. *See Handlin*, 2022 ME 46, ¶ 12, 265 A.3d 1008. Second, the Defendants' termination of Mr. Lausser's employment undisputedly constitutes an "adverse employment action." *Id.* Third, given the close temporal relationship of just twelve days between Mr. Lausser's protected activity and the termination of his employment, exacerbated by Mr.

Pearsall's statement that Mr. Lausser had done "nothing" wrong to warrant termination, *see Compl.* ¶ 18; *Lausser Aff.* ¶ 7, leads the Court to reasonably infer a causal connection between Mr. Lausser's protected activity and adverse employment action. *See Handlin*, 2022 ME 46, ¶ 12, 265 A.3d 1008.

Based on the foregoing, Mr. Lausser has pleaded a cognizable claim for liability against the Defendants for violation of 26 M.R.S. § 833.

### ii.      Deborah Hayes

Ms. Hayes avers that she called Mr. Pearsall on or about August 29, 2022 "to express concern about her fellow flight attendants," and that Mr. Pearsall responded with questions as to whether she was representing an "employee group." *Compl.* ¶ 24; *Hayes Aff.* ¶ 7.   On or about September 15, 2022, she "inquired with the [S.D DOL] about seeking unemployment compensation since she had not been paid since July 5, 2022 . . .. [and] was told to file a notice of Unpaid Wages form through their online website." *Compl.* ¶ 25; *Hayes Aff.* ¶ 8.   Ms. Hayes's employment with Elite Airways was terminated on September 28, 2022. *Compl.* ¶ 26; *Hayes Aff.* ¶ 9.

Accepting her allegations as true in light of the Defendants' default, *Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes Ms. Hayes has established a violation of the MWPA's prohibition on employer discrimination based on a protected action. First, as with Mr. Lausser, failure to pay minimum wage as described in Counts II and III constitutes a violation of federal and state law, such that her claim filed with the S.D. DOL was based on conduct she had "reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States," 26 M.R.S. § 833(1)(A),  and thus was protected under the

MWPA. *See Handlin*, 2022 ME 46, ¶ 12, 265 A.3d 1008. Second, the termination of Ms. Hayes's employment plainly amounts to an "adverse employment action." *Id.* Third and finally, based on the temporal proximity between her protected activity and adverse employment action, Mr. Pearsall's negative response to Ms. Hayes's compensation questions, and a lack of any other basis for her termination in the record, the Court concludes a causal connection exists between Ms. Hayes's protected activity and the adverse employment action. *Id.*

The Court thus concludes Ms. Hayes has established the circumstances of her termination violated the MWPA's prohibition on discrimination by employers.

### b.    Liability of Each Defendant

26 M.R.S. § 833 prohibits discrimination by an "employer." The statute defines an "employer" for the purposes of this subsection as "a person who has one or more employees. 'Employer' includes an agent of an employer and the State, or a political subdivision of the State." 26 M.R.S. § 832(2).

### i.    Elite Airways

The MWPA defines "person" to mean "an individual, sole proprietorship, partnership, corporation, association or any other legal entity." 26 M.R.S. § 832(3). Consistent with Counts I and II, the Court concludes Elite Airways is liable to each Plaintiff, respectively, as an employer for its discriminatory employment action under 26 M.R.S. § 833.

The complaint pleads that Elite Airways, a limited liability company, employed Mr. Lausser "from May 10, 2021 through September 27, 2022." *Compl.* ¶¶ 1-3; *Lausser Aff.* ¶ 1; *Hayes Aff.* ¶ 1. Elite Airways terminated Mr. Lausser and Ms. Hayes

on September 27, 2022 based on their protected actions of filing respective claims for unpaid wages with the S.D. DOL. *See Lausser Aff.* ¶¶ 5-7; *Hayes Aff.* ¶¶ 7-9. Accepting the truth of these allegations, *Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes Elite Airways is liable for violations of 26 M.R.S. § 833.

### ii.        John Pearsall

Plaintiffs properly waive argument seeking to hold Mr. Pearsall individually liable for violations of 26 M.R.S. § 833. *See Pls.' Mot. for Default J.* at 9 ("Plaintiffs seek default judgment against Elite [Airways] on Count IV of the complaint, not [Mr.] Pearsall"). Further, in *Fuhrmann v. Staples the Office Superstore E., Inc.*, 2012 ME 135, 58 A.3d 1083 (Me. 2012)) , the Law Court considered whether 26 M.R.S. § 833 permits a cause of action against an individual supervisor and concluded that, pursuant to the statutory definition, statutory scheme, and legislative intent, "there is no individual supervisor liability for employment discrimination" and affirming the trial court's dismissal of the whistleblower claim against individual supervisors. *Furhman*, 2012 ME 135, ¶ 35, 58 A.3d 1083.

For the foregoing reasons, the Court concludes the Plaintiffs may not hold Mr. Pearsall individually liable under of 26 M.R.S. § 833.

### B.        Calculating Damages

Having established liability of Elite Airways to both Mr. Lausser and Ms. Hayes on Counts I, II, and IV, as well as joint and several liability of both Defendants to Ms. Hayes on Count III, the next step is to determine the damages each Plaintiff is entitled to on each count. However, having identified inconsistencies in the Plaintiffs' pleadings that leave the Court unclear on the amount of damages claimed

by each Plaintiff on particular counts, as well as the legal basis for respective Plaintiff's entitlement to damages sought, the Court recites the contents of the Plaintiffs' filings and poses clarifying questions to be addressed by Plaintiffs' counsel prior to the Court's final entry of judgment. The Court remains concerned about the need for numerical clarity to avoid the prospect of double recovery given these overlapping theories of recovery.

### 1.    Damages Entitlement on Each Count

#### a.    Count I: Maine Unpaid Wages Statute, 26 M.R.S. §§ 626, 626-A

The penalties for violations of 26 M.R.S. § 626 are set forth in 26 M.R.S. § 626-A, which provides:

> An employer is liable to the employee or employees for the amount of unpaid wages and health benefits. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages or health benefits under this subchapter, such judgment includes, in addition to the unpaid wages or health benefits adjudged to be due, a reasonable rate of interest, costs of suit including a reasonable attorney's fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages.

26 M.R.S. § 626-A.

#### i.    John Lausser

In the motion for default judgment, Plaintiffs submit Mr. Lausser "was unpaid as a salaried employee for three months," calculating that "[h]is Unpaid Wages subject to the statute are $39,999.94 in wages, plus out of pocket benefit expenses of $6,253.00, totaling $46,252.00. Pursuant to the statute, [Mr.] Lausser is entitled to an additional amount of twice the unpaid wages for a total of $138,756." *Pls.' Mot. for Default J.* at 6-7. However, in Plaintiffs' conclusion, the amount stated in a table

41

summarizing damage amounts calculates the amount as $138,765, a small but unexplained difference of nine dollars. *Id.* at 10.

In addition, the Plaintiffs' supplemental brief states "Mr. Lausser was employed on a bi[]weekly salary of $6,666," adding that he does not seek accrued vacation pay. *Pls.' Suppl. Brief* at 12 & n.1. Continuing, Plaintiffs calculate that, "for the full 15-week period during which Mr. Lausser received no wages, the accurate amount of unpaid wages is $49,047.57." *Id.* at 12. Noting the statute also entitles Mr. Lausser to liquidated damages equal to twice the amount owed and reminding the Court of out-of-pocket health care expenses as a result of the Defendants' failure to pay insurance premiums, Plaintiffs calculate Mr. Lausser is entitled to "Unpaid wages: $49,047.57[;] Unpaid health benefits $6,253.00[;] Liquidated damages: $110,601.14; [;] Interest: $1,703.52[; for a] Total: $167,605.23." *Id.* at 13 (formatting altered).

The Court calculates that, based on Mr. Lausser's biweekly paycheck of $6,667.67,[2] *see Lausser Aff.* ¶ 3; *id.*, Attach. 1, *Earning Statement*, and the period of unpaid wages spanning from June 16 until September 27, 2022—a period of fifteen weeks—that Mr. Lausser's unpaid wages amount to $50,007.53 ($6,667.67 biweekly multiplied by 7.5 two-week periods). With the addition of $6,253.00 in out-of-pocket health care expenses, *Lausser Aff.* ¶ 12; *id.*, Attach. 6, *Jackson Dental, Prof. L.L.C. Bill* at 2-3, the total amount of "unpaid wage or health benefits" authorized by statute

---

[2]    Mr. Lausser's affidavit provides this amount as his biweekly wages supported by the attached earning statement.

stands, by the Court's math, at $56,260.53. Further, Mr. Lausser is entitled to liquidated damages in "an additional amount equal to twice the amount of unpaid wages," 26 M.R.S. § 626-A, here representing an amount of $100,015.06 ($50,007.53 multiplied by 2). Together, then, Mr. Lausser is owed $156,275.59 in unpaid wages, health care expenses, and liquidated damages. These results do not align with the damage amounts submitted by the Plaintiffs in either their motion for default judgment or supplemental brief. To make certain that it has not erred in its calculation, the Court orders the Plaintiffs to respond to the Court's analysis and confirm their demand.

The Court encounters two additional issues that requires resolution before entering judgment. First, Plaintiffs submit Mr. Lausser is entitled to statutory interest in the amount of $1,703.52, calculating the amount of interest by applying a 9% annual interest rate. *Pls.' Suppl. Brief* at 13, 16. Plaintiffs do not, however, anywhere explain the basis for choosing this rate of interest. In *Avery v. Kennebec Millwork, Inc.*, 2004 ME 147, 861 A.2d 634, the Maine Supreme Judicial Court considered a challenge to the trial court's imposition of a 5% rate of interest to its unpaid wages award pursuant to 26 M.R.S. § 626. *Avery*, 2004 ME 147, ¶ 7, 861 A.2d 634. The *Avery* Court concluded that the Maine statute generally governing prejudgment interest in civil cases, 14 M.R.S. § 1602-B, applied to damage awards for unpaid wages under 26 M.R.S. § 626, including its provision stating "[i]n civil actions . . . prejudgment interest is allowed at the one-year United States Treasury bill rate plus 3%." *Id.* (quoting 14 M.R.S. § 1602-B(3)). The First Circuit recognized

43

the Law Court's reading of the statute in *Dinan v. Alpha Networks, Inc.*, 764 F.3d 64 (1st Cir. 2014). *Id.* at 72-73 ("*Avery* addressed an analogous issue: Might one infer from section 626's grant of interest at a 'reasonable rate' an exception to section 1602-B(3)'s general rule providing for a particular (and relatively high) rate ('the one-year United States Treasury bill rate plus 3%')? The Law Court answered 'no,' finding the general rule of section 1602-B controlling"); *accord Estes v. Pineland Farms, Inc.*, No. 2:10-cv-00347-MJK, 2012 U.S. Dist. LEXIS 76309, at *18 (D. Me. June 1, 2012) (holding, in an analogous unpaid wages cause brought under 26 M.R.S. §§ 626 and 626-A, that "[p]ursuant to Maine law, the reasonable rate of prejudgment interest available for wage claims is the same as it is for other civil actions: the one-year United States Treasury bill rate plus three percent. As defined in Maine law: 'one-year United States Treasury bill rate' means the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue") (citing *Avery*, 2004 ME 147, ¶¶ 6-8, 861 A.2d 634; 14 M.R.S. § 1602-B(3)(A)). Here, the Plaintiffs have not provided any authority or explanation for their chosen interest rate of 9%, such that the Court cannot conclude whether it is "a reasonable rate of interest" as required by 26 M.R.S. § 626-A.[3]

---

[3]    Pursuant to 14 M.R.S. § 1602-B(3), the Court understands the allowable interest rate for prejudgment interest is "one-year United States Treasury bill rate plus 3%." *Id.*; *see also* 14 M.R.S. § 1602-B(3)(A) (defining "one-year United States Treasury bill rate" to mean "the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue"). The statute continues, for cases in which a notice of claim has not been

Second, Plaintiffs appear to calculate the amount of prejudgment interest based only on the amount of "unpaid wage or health benefits," *see Pls.' Suppl. Brief* at 16; however, the *Dinan* Court interpreted the Law Court's decision in *Avery* "to have presumed that in a wage payment action interest is calculated under § 1602-B based on the entire judgment, including *all damages*." *Dinan*, 764 F.3d at 72 (emphasis supplied). Put differently, the First Circuit and this District read the statutory grant of a rate of prejudgment interest to apply equally to the liquidated damages portion of the judgment. *Id.* The Court will give the Plaintiffs an opportunity to respond to the Court's understanding before entering judgment.

### ii.        Deborah Hayes

Plaintiffs' motion for default judgment states Ms. Hayes "has unpaid wages totaling $2,793, applying the penalties she is entitled to an award of $8,379." *Pls.' Mot. for Default J.* at 7. Plaintiffs address the counts out of order in their supplemental brief and thus merely state Ms. Hayes "does not seek recovery of her wages that were not paid so as to avoid double recovery," though they later add "[w]ith

---

served personally or by registered or certified mail, "prejudgment interest accrues from the date on which the complaint is filed." 14 M.R.S. § 1602-B(5).

As no evidence in the record establishes Defendants were served personally or by registered mail, the Court concludes prejudgment interest began accruing when the complaint was filed on May 20, 2024. Thus, under 14 M.R.S. § 1602-B(3), the allowable interest rate is calculated based on the weekly average United States Treasury bill rate for the last full week of 2023. On the Court's review, the average bill rate published by the United States Treasury for the final week of December 2023 is 4.8. *See Daily Treasury Bill Rates*, U.S. DEP'T OF THE TREASURY (last visited August 4, 2025) https://home.treasury.gov/resource-center/data-chart-center/interest-rates/TextView?type=daily_treasury_bill_rates&field_tdr_date_value=2023 (listing one-year bill rates of 4.82 on December 26, 4.78 on December 27, 4.82 on December 28, and 4.79 on December 29). Adding the 3% authorized by statute, the Court understands the allowable prejudgment interest rate in this case as 7.8%, which does not align with the 9% rate proposed by the Plaintiffs.

respect to [] Ms. Hayes, no damages were incurred under this statute, and therefore no recovery is sought on her behalf pursuant to 26 M.R.S.[] § 626-A." *Pls.' Suppl. Br.* at 12-13.

The Court understands Ms. Hayes as asserting a right to damages in the amount of unpaid damages for two trips, each with its own compensation rate. First, Ms. Hayes worked a three-day trip from May 8-10, 2022, at a daily pay rate of $135 per day plus a $35 per diem. *Hayes Aff.* ¶ 3. Thus, by the Court's math, Ms. Hayes was owed to be paid $510 for this trip. *Contra id.* (stating, for this trip, she was owed "total $465"). For the second trip, a twelve-day trip from July 11-22, Ms. Hayes was paid at a rate of $144 per day plus a $50 per diem. *Hayes Aff.* ¶ 4. She was therefore owed to be paid $2,328 for this second trip ($194 per day multiplied by twelve days). Between the two trips, the Court concludes Ms. Hayes is entitled to $2,838 in unpaid wages. This amount does not align with the amount of unpaid wages proposed by the Plaintiffs' motion for default judgment.

Further, as above, Plaintiffs do not explain the interest rate that should be applied to Ms. Hayes's unpaid wages, nor do they argue whether, or at what rate, prejudgment interest should be applied to the liquidated damages award.

> **b.    Count II: Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664**

Damages for a violation of 26 M.R.S. § 664 are set forth in 26 M.R.S. § 670, which permits recovery "for the amount of unpaid minimum wages . . .. includ[ing], in addition to the unpaid wages adjudged to be due, an additional amount equal to

such wages as liquidated damages, and costs of suit including a reasonable attorney's fee." 26 M.R.S. § 670.

In their motion for default judgment, Plaintiffs state "[t]he claim is asserted in the alternative to the Unpaid Wages claim. The damages sought are the same as pled in Count I of the complaint . . .. An award under Count I satisfies the Plaintiffs claims in Count II." *Pls.' Mot. for Default J.* at 7. Plaintiffs state the same in their supplemental brief, explaining "[u]nder Maine's Minimum Wage and Overtime Statute, 26 M.R.S.[] § 664, the remedies available mirror those provided under 26 M.R.S.[] § 626, including recovery of unpaid wages, liquidated damages, and reasonable attorney's fees and costs. Therefore, to avoid duplicate recovery, Plaintiffs do not seek damages under Count II." *Pls.' Suppl. Brief* at 13.[4]

### c.    Count III: Federal Fair Labor Standards Act, 29 U.S.C. § 213

The penalties for violations of 29 U.S.C. §§ 206 and 207 are provided in 29 U.S.C. § 216, which authorizes damages "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

### i.    John Lausser

In their supplemental brief, Plaintiffs state Mr. Lausser is not entitled to relief under the FLSA "since Mr. Lausser was an ex[]empt employee." *Pls.' Suppl. Br.* at

---

[4]    As Plaintiffs are not claiming damages under Maine Minimum Wage and Overtime statute, the Court need not address whether they are correct that this recovery under this statute mirrors the remedies available under 26 M.R.S. § 626. *See, e.g., Fickett v. Golden Eagle Rest.*, No. 1:10-cv-00497-JAW, 2011 U.S. Dist. LEXIS 35048, at *11-17 (D. Me. Mar. 30, 2011); *Anderson v. Theriault Tree Harvesting, Inc.*, No. 08-330-B-W, 2010 U.S. Dist. LEXIS 4538, at *56-59 (D. Me. Jan. 20, 2010).

10; *see also id.* at 5 ("Mr. Lausser was a salary exempt employee, paid on a salary basis in excess of the required statutory amount. Therefore, he cannot recover damages for failure to pay his wages under the FLSA").  Accepting the Plaintiffs' assessment, the Court concludes Mr. Lausser is not entitled to damages under the FLSA, as brought under Count III.

### ii.    Deborah Hayes

In the motion for default judgment, Plaintiffs state "an employee is entitled to recover the employee[']s full salary under the FLSA, even if it is higher than minimum wage when the employer fails to pay the employee at all." *Pls.' Mot. for Default J.* at 8 (citing 29 U.S.C. § 207; *Helix Energy Solutions Group, Inc.*, 598 U.S. 39).  Plaintiffs submit Ms. Hayes is therefore entitled to recover "two pay periods, plus liquidated damages = \$5,586." *Id.*  However, in their supplemental brief, Plaintiffs posit Ms. Hayes "is entitled to her unpaid wages total \$2,793.00, with an equal amount due in liquidated damages, \$2,793.00, and statutory interest of \$97.01, for a total of \$5,683.01." *Pls.' Suppl. Brief* at 10.

The Court's review of Plaintiffs' cited authorities provides no basis to support their assertion that an employee is entitled to recover wages at a contracted-for amount under the FLSA.  29 U.S.C. § 207, addressing "Maximum hours," sets forth the requirement that employees who work longer than forty hours in a given workweek are entitled to compensation at a rate not less than one-and-a-half times the employee's regular rate.  Further, the Court's review of *Helix Energy Solutions Group, Inc.*, 598 U.S. 39, indicates the *Helix* Court considered whether an employee is exempt as a bona fide executive paid on a salary basis; on the Court's read, *Helix*

48

says nothing that supports Plaintiffs' claim for "agreed upon wages even if they are higher than minimum wage." *Pls.' Mot. for Default J.* at 8.

Further, the Court's independent review identified authority directly to the contrary. Precedent from this District has held that an employee is entitled under the FLSA only to recovery of minimum wage, and time-and-a-half for any overtime, for uncompensated hours worked. *See Bradford*, 2022 U.S. Dist. LEXIS 87338, at *12 ("With some exceptions, both the FLSA and Maine's minimum wage and overtime laws mandate that employees be paid at least the then-current minimum wage for any time worked"); *id.* at *12 n.7 ("The applicable hourly minimum wage is either the federal rate or the state or local rate, whichever is higher. Maine's minimum wage rates exceeded the federal rate during the years of Ms. Bradford's employment— $7.50/hour in 2016, $9.00/hour in 2017, $10.00/hour in 2018, and $11.00/hour in 2019—so the Maine minimum wage applies") (internal citations omitted). Caselaw from other federal courts similarly concludes that only minimum wages for hours worked are recoverable under the FLSA. *See, e.g.*, *Sevares v. Am. Pipeline Constr., LLC*, No. 22-cv-21233-MOORE/DAMIAN, 2023 U.S. Dist. LEXIS 34055, at *19 (S.D. Fla. Feb. 28, 2023) ("Under the FLSA, Plaintiff is only entitled to recover unpaid minimum wages. The FLSA does not provide a basis for recovery of the agreed upon hourly rate of pay in excess of the minimum wage") (internal citation omitted); *Aminov v. EC Commodities Corp.*, No. 16-CV-4800 (AMD) (SMG), 2017 U.S. Dist. LEXIS 106228, at *13 (E.D.N.Y. July 6, 2017) ("the FLSA allows employees who are

not paid for their labor to recover only the minimum wage for the regular hours they worked").

Exacerbating the issue for the purposes of the present motion for default judgment is that, while Plaintiffs have provided evidence as to the days Ms. Hayes is seeking unpaid wages, they have provided neither the number of hours Ms. Hayes worked on those days, including any potential overtime, nor the applicable minimum wage that should be applied. The Court thus directs counsel to provide a basis for their assertion that Ms. Hayes is entitled to "agreed upon wages" under the FLSA, or to otherwise submit further evidence as to the number of hours, applicable minimum wage, and total damages to which she is entitled on her FLSA claim.

Finally, as Plaintiffs' answer to this question may affect the scope of recoverable damages under the FLSA, the Court recognizes potential secondary effects on Plaintiffs' other counts, for which they have stated they have waived damages as duplicative of Ms. Hayes's anticipated recovery under the FLSA.

### d. Count IV: Maine Whistleblower Protection Act, 26 M.R.S. § 833

As previously noted, an employee discriminated against in violation of the MWPA brings a claim against their employer pursuant to the MHRA. *See Harrison*, 811 F.3d at 46 (citations omitted). "Remedies available for unlawful discrimination under the MHRA include back pay and front pay to the extent that discrimination has resulted in lost income, injunctive relief in the form of orders to cease and desist, reinstatement in employment, civil penal damages, and attorney's fees." *Angelillo v. Idexx Labs.*, Inc., No. CV-26-371, 2018 Me. Super. LEXIS 64, at *4 (Super. Ct. Me.

Mar. 29, 2018) (citing 5 M.R.S. §§ 4613(2)(B)(1), 4613(2)(B)(2), 4613(2)(B)(7), 4614). In the case of intentional discrimination, "remedies may include punitive and compensatory damages, including compensatory damages for emotional distress and inconvenience." *Id.* (citing 5 M.R.S. §§ 4613(2)(B)(8)(a) and (d)). Finally, "attorney's fees, civil penal damages, compensatory damages, and punitive damages may not be awarded unless the complainant has filed a complaint with the Maine Human Rights Commission and followed Commission procedures." *Id.* (citing 5 M.R.S. § 4622(1)).

### i.    John Lausser

In their motion for default judgment, Plaintiffs assert Mr. Lausser's right to back pay. *Pls's Mot. for Default J.* at 9. First, "[f]or the six months that he was unemployed, he accrued $80,000 in back pay damages." *Id.* Further, though he subsequently secured employment, Plaintiffs submit his new position pays less than his position at Elite Airways, resulting in additional back pay damages, as of the date of filing, of $52,159.99 for a total amount of back pay owed of $132,159.99. *Id.* In their supplemental brief, Plaintiffs' again state Mr. Lausser is owed back pay for his six-month period of unemployment in the amount of $80,000 and, based on a lower salary in his new role, an additional back pay amount of "$52,159.99 as of the date of default judgment." *Pls.' Suppl. Br.* at 14. However, Plaintiffs continue in their supplemental brief that "unpaid health benefits and its liquidated damages results in a total amount for damages under the Maine Law equal to $144,665.99." *Id.*

Mr. Lausser asserts his salary as an employee of Elite Airways was $160,000 per year and that he was unemployed for six months following his termination, such that he is entitled to $80,000 in back pay. *Lausser Aff.* ¶¶ 3, 11. Further, based on a

lower salary at his new job, Mr. Lausser claims the differential between his current wages and employment at Elite Airways, as of the date of his affidavit, amounts to an additional $52,159.99 in back pay. The Court thus calculates Mr. Lausser's total back pay owed to be $132,159.99. These calculations align with Plaintiffs' motion for default judgment and, initially, with their supplemental brief. However, Plaintiffs continue in their supplemental brief to add "unpaid health benefits and its liquidated damages results" to reach its proposed total damage award on Count IV of $144,665.99. *Pls.' Suppl. Brief* at 14.

This final addition by the Plaintiffs raises two issues. First, the Court remains unsure of the legal basis to award unpaid health benefits on Mr. Lausser's MWPA claim, which Plaintiffs have not explained, and, further, the Court understands Plaintiffs to be seeking $6,253 in unpaid health benefits on Count I, implicating potential double recovery concerns. Second, while the Court recognizes the delta between $132,159.99 and 144,665.99 is $12,506—or twice $6,253—Plaintiffs have not explained whether they intend to claim liquidated damages of twice the unpaid health benefits or the legal basis for such a liquidated damages claim. The Court thus requires the Plaintiffs to respond to these concerns before entering judgment.

### ii. Deborah Hayes

In both their motion for default judgment and supplemental brief, Plaintiffs submit Ms. Hayes "was a part time employee and did not have a regular schedule," "stopped looking for replacement work and has retired," and thus requests only "an award of her unpaid expenses in the amount of $497.52 but does not seek a back pay award." *Pls.' Mot. for Default J.* at 9; *accord Pls.' Suppl. Br.* at 14-15 (same).

On the Court's review, Ms. Hayes seeks to recover "expenses that were never reimbursed in the amount of $497.52," explaining that these costs include "air fare to fly home from the trip, and Lyft transportation. *Hayes Aff.* ¶ 10; *see also id.*, Attach. 2, *Ex. 2* (bank account records highlighting expenses on July 21, 2022 of, respectively, $28.00, $13.00, and $395.60 paid to United Airlines, as well as $60.92 paid to Lyft on July 30, 2022). At the default damages hearing, Ms. Hayes further testified that technical issues with the Elite Airways airplane at the end of the second trip forced her to purchase a Lyft and plane tickets out of pocket to be able to return home. The Court recognizes Ms. Hayes's statutory entitlement to compensatory damages under 5 M.R.S. § 4622(1) and concludes she is entitled to recover these work-related expenses.

### 2.    Calculating Damages to Avoid Double Recovery

In light of the Court's articulated concerns and directions to Plaintiffs to respond relating to damage awards on particular counts, the Court concludes it is premature to rule on the issue of double recovery on this record and thus holds in abeyance this portion of its analysis pending Plaintiffs' response to its questions.

### C.    Attorney's Fees

Finally, the Court briefly addresses the statutory basis for recovery of attorney's fees on each of the Plaintiff's causes of action.

      1.      **Entitlement to Recovery of Attorney's Fees on Each Count**

      a.      **Count I: Maine Unpaid Wages Statute, 26 M.R.S. §§ 626, 626-A**

Under the plain language of 26 M.R.S. § 626, attorney's fees are recoverable for a litigant who succeeds on a claim brought pursuant to this section. *See* 26 M.R.S. § 626 ("An employer found in violation of this section is liable for the amount of unpaid wages and all accrued vacation pay that must be paid to the employee or employees on cessation of employment pursuant to this section. In addition, the judgment rendered in favor of the employee or employees must include a reasonable rate of interest, an additional amount equal to twice the amount of those unpaid wages and that accrued vacation pay as liquidated damages and *costs of suit, including a reasonable attorney's fee*") (emphasis supplied).

26 M.R.S. § 626-A similarly permits recovery of attorney's fees for a successful litigant. *See* 26 M.R.S. § 626-A ("Any employer is liable to the employee or employees for the amount of unpaid wages and health benefits. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages or health benefits under this subchapter, such judgment includes, in addition to the unpaid wages or health benefits adjudged to be due, a reasonable rate of interest, *costs of suit including a reasonable attorney's fee*, and an additional amount equal to twice the amount of unpaid wages as liquidated damages") (emphasis supplied).

      b.      **Count II: Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664**

An employee's remedies for their employer's violation of 26 M.R.S. § 664 are provided in 26 M.R.S. § 670, which plainly permits the recovery of attorney's fees.

*See* 26 M.R.S. § 670 ("Any employer shall be liable to the employee or employees for the amount of unpaid minimum wages.  Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages under this subchapter, such judgment shall include, in addition to the unpaid wages adjudged to be due, an additional amount equal to such wages as liquidated damages, *and costs of suit including a reasonable attorney's fee*") (emphasis supplied).

### c.    Count III: Federal Fair Labor Standards Act, 29 U.S.C. § 213

Attorney's fees are further recoverable for Plaintiffs' federal minimum wage and overtime claim, brought as Count III of their complaint.  As explained, 29 U.S.C. § 206 and § 207, respectively, set forth the federal minimum wage and maximum hours requirements.  29 U.S.C. § 216, the penalty provision applicable to violations of 29 U.S.C. § 206 and § 207, authorizes "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, *allow a reasonable attorney's fee to be paid by the defendant*, and costs of the action." *Id.* (emphasis added).  29 U.S.C. § 216(b).

### d.    Count IV: Maine Whistleblower Protection Act, 26 M.R.S. § 833

As explained above, an employee discriminated against in violation of the MWPA brings a claim against their employer pursuant to the MHRA.  *See Harrison*, 811 F.3d at 46 (citations omitted).  Attorney's fees are available under claims brought pursuant to the MHRA, with the express limitation that the plaintiff must have first filed a complaint with the Maine Human Rights Commission (MHRC) and the MHRC either dismissed it, failed to enter a conciliation agreement, issued a right to sue, or

dismissed the case in error. *See* 5 M.R.S. § 4622 ("Attorney's fees under section 4614 and civil penal damages or compensatory and punitive damages under section 4613 may not be awarded to a plaintiff in a civil action under this Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the [Maine Human Rights Commission (MHRC)] and the commission either: A. Dismissed the case under section 4612, subsection 2 or subsection 2-A, paragraphs A and B and D to F; B. Failed, within 90 days after finding reasonable grounds to believe that unlawful discrimination occurred, to enter into a conciliation agreement to which the plaintiff was a party; C. Issued a right-to-sue letter under section 4612, subsection 6; or D. Dismissed the case in error").

Here, Plaintiffs allege they "filed a complaint with the [MHRC] alleging whistleblower retaliation on November 9, 2022" and "Notice of Failure to Conciliate issued on February 22, 2024, satisfying Plaintiffs['] obligation to exhaust administrative remedies" under the MHRA. *Pls.' Mot. for Default J.* at 5; *see also Pls.' Suppl. Brief* at 3 ("Plaintiffs also filed a whistleblower complaint with the [MHRC] on November 9, 2022, alleging retaliation for reporting unpaid wages. Elite [Airways] failed to respond to the complaint, and on February 22, 2024, the Commission issued a Notice of Failure to Conciliate, thereby satisfying the administrative exhaustion requirement for the [MWPA]").

Accepting the Plaintiffs' allegations as true in light of the Defendant's default, *Ortiz-Gonzalez*, 277 F.3d at 62, the Court concludes the Plaintiffs have exhausted

their administrative remedies and thus are entitled to recover attorney's fees pursuant to the MHRA.

### 2.    Calculating Recoverable Attorney's Fees

At bottom, the Court concludes the Plaintiffs are entitled to recovery attorney's fees under each of the statutes giving rise to their causes of action.  To calculate reasonable attorney's fees, courts apply the lodestar method, which multiplies counsel's hourly rate by the hours counsel spent on the case.  *See Hensley*, 461 U.S. at 433-34.  In support, counsel must submit materials setting forth their hourly rate and a description of the work.  *See Hutchinson*, 636 F.3d at 15.

Attorney Morris has submitted two affidavits and corresponding invoices setting forth an hourly rate of $300 per hour and the hours she has committed to this matter.  First, on March 31, 2025, Attorney Morris submitted an affidavit and attached invoice for attorney's fees in amount of $9,565.  *Morris Aff.*  Second, on June 13, 2025, Ms. Morris submitted a second affidavit and attached invoice setting forth the $9,565 amount and an additional amount of $9,000.  *Morris Suppl. Aff.*  She explains that her second submission represents additional work conducted subsequent to the filing of her initial invoice up until the date of filing.  *Id.* at 1.

In light of the Court's lingering questions with regard to damages calculations, as articulated above, the Court holds the final calculation of Ms. Morris's attorney's fees in abeyance pending submission of her response, with the understanding that the questions posed and additional research necessary may affect the amount of attorney's fees sought.

## VI.   SUMMARY

The Court concludes Plaintiffs have sufficiently pleaded a basis for holding Elite Airways liable to both Mr. Lausser and Ms. Hayes on Counts I, II, and IV, as well as holding Elite Airways and John Pearsall joint and severally liable to Ms. Hayes on Count III.

However, to accurately calculate the damages Plaintiffs are owed on each count, and further to avoid double recovery, the Court orders Plaintiffs to respond to the following questions within fourteen days of the entry of this order:

1) What is the true and accurate amount of unpaid wage and health benefits, respectively, owed to Mr. Lausser from the period spanning June 16, 2022 until September 27, 2022 and how is this amount properly calculated?

2) What is the true and accurate amount of unpaid wages to which Ms. Hayes is entitled for the trips conducted from May 8-10 and July 11-22 of 2022 and how is this amount properly calculated?

3) What is the basis for Plaintiffs' application of a 9% prejudgment interest rate to the damages sought under Count I?

4) Should prejudgment interest be applied to liquidated damages sought under Count I pursuant to *Avery v. Kennebec Millwork, Inc.*, 2004 ME 147, 861 A.2d 634?

5) What legal authority supports Plaintiffs' claim that an employee may recover agreed upon wages higher than the minimum wage pursuant to the FLSA?

6) If Plaintiffs determine state and federal minimum wage and overtime laws only entitle employees to recover minimum wages and overtime for hours worked, how many hours did Ms. Hayes work for which they were not paid and what hourly rate should be applied to calculate their damages?

7) On Count IV, what legal authority supports Plaintiffs' assertion that Mr. Lausser is entitled to unpaid health benefits and how should the Court align this request with a request for the same amount brought under Count I?

8) On Count IV, what legal authority supports Plaintiffs' claim for liquidated damages and what evidence supports an award in the contemplated amount?

9) As default judgment has not yet been entered, how should the Court calculate any additional backpay on Count IV accrued from the date of the Plaintiffs' filing until the date of its default judgment?

10) In light of the Plaintiffs' responses to the preceding questions, how should the Court calculate damages to avoid double recovery?

## VII.  CONCLUSION

The Court ORDERS John Lausser and Deborah Hayes to respond to the Court's enumerated questions within fourteen days of the issuance of this order.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2025